422-0525, Barry Jones with the Workers' Compensation Commission. Now, please proceed. Good morning. This is the Court of Appeals Counsel. My name is Jacob Jackson. I'm representing Barry Jones in this matter. Barry was injured in an auto accident in September 2011. The commission ruled that his injury did not arise out of the course of his employment. So I'm here today asking you to reverse that decision and amend this case back to the commission for determination of emergency issues. Excuse me. Just as a way of background, Barry started working for the employer during doing looking and revising work in July 2007 The employer kind of ran a small, basic working environment up in the Danville area. The employer decided he didn't know where to work, they don't know the jobs. My client was hired and he did not have a driver's license. This was known by the employer. My client always worked away from addresses that were not the employer's business address, so always working away from the employer's business address. On the accident date, my client's girlfriend was supposed to pick him up. She was having car problems, so my client asked the employer for a ride to be dropped off. The employer agreed to do this. Can I ask you a candid question? There is a dispute, is there not, between how your client got there the day of the accident and how he left. Who's Brian? Brian Mormon is the employer. Yes, there is a dispute. My client says that he rode with the employer to the job site. He denies that he drove him there. He also, again, with the girlfriend, he denies that this was something he did on a regular basis. So, isn't that a question to be found, fact findings being made by the commission? Because there's a dispute over that. There is a dispute. I would say that those facts are not essential facts to make the determination whether my client's injured or was out in the course of the appointment. What facts are not in dispute is when my client left the job site that day, he was absolutely in fact in the employer's van. So whether he got there that day, how he got there, to me is not relevant in terms of how he left the job site that day. Because when he left the job site, that's when the accident happened. He did not get in the accident on the way. So your theory would be any time an employee gets a ride home by a supervisor, that if he's injured in that ride home, it's compensable? I think under HINDLE, I would agree with that, yes. If the employee steps into the employer's vehicle, gets a ride home from that job site. Even though that vehicle is not supplied by the employer for the purpose of giving people rides home, it just happens to be the supervisor's vehicle, and he gives them a ride home on occasion. Yes, I would still say at the time of the accident, this vehicle was used to transport my client. You're saying that, but there's a big distinction. You cited HINDLE. In HINDLE, there was no dispute that the employer required the crew leader to supervise and transport the team members back and forth to town. Is the Moorman's Improvement Van in this case, was it a conveyance that was tasked with driving around co-workers? I don't think the evidence establishes that. I don't think the evidence establishes that it was done on a regular basis. I think it establishes that it was done on the day of the question when my client was injured. Yeah, but wasn't HINDLE, would you agree? HINDLE was a situation where the supervisor required the crew leader to drive people. That was required, correct? Absolutely. But here, you'd have to concede it wasn't required. That is correct. And I would also point out in PING, a decision that relied heavily on HINDLE, the employer did not require the employees to ride in the van pool in that case. So whether the employer required the employee to ride in the van, to me, is not a deciding factor whether the injury arose out of an increase in employment. You raise a good point. We want to have co-workers refusing to drive people there on the ground, and the employees are going to tell them, don't drive these people, you're going to attach the company to liability now. You just tell the supervisors don't do it. Yeah, I would say tell the boss not to do it. Well, yeah, so basically we have here not co-workers. We allegedly have, you're claiming, an employer. Yes, rivaling the employer. The employer is the one who's transporting the employee, am I correct? Yes. The driver of the van was a co-employee, but the owner of the van was Mr. Mormon,  and did he provide that van for the purpose of transporting employees to and from the job site? There's no evidence of that. There's no evidence to show that he regularly provided it. Isn't that what distinguishes this case from Ping? I think, yeah, in that case, the van was regularly provided to employees, but as I said, the employees were not required to ride in the van pool. What was the van for? The van, my understanding was for transporting Mr. Mormon from job site to job site, also hauling equipment needed, tools needed for each job site, shingles, hammers, air compressors, what have you, and also used to haul a trailer, carrying additional items. So you're really visualizing this van as an extension of the workplace? Yes. Similar to being in a tool shed in a factory. Is that what we're kind of analogizing to? I think you could. I guess my argument is under the traveling employee exception. I think my class qualifies as a traveling employee, and I think from the time he gets, when he has to travel away from his employer's purposes to do his job, from the time he gets back home, he's still in the course of the employment. So if he's in the van traveling back and gets in an accident, he's still in the course of his employment. When does that end? As I understand it, wasn't the workday clearly over when this thing happened? Yeah, my class was off the clock at this time. But under the traveling employee exception, until he gets back to his house, the workday has not ended. I think if we go back, if I can circle back to Kendall, my main point here is the trip that my client took and was injured in was in a vehicle under the control of the employer. How was it under the control of the employee? You said this was a vehicle for Mr. Mormon? Yes. Who's the owner? Yes. Was he there that day? Mr. Mormon? Yes, he was. Was he driving it? He was not driving a co-employee truck. But again, in Hindle, you said, I think you acknowledged, that the employer required the crew leader to transport them. That was part of the daily routine. But then you acknowledged nobody here was required to transport anybody, correct? That is correct. Isn't that an important distinction? Well, I think seeing the decision of PING makes it clear that the employer requiring the employee to travel is not a vehicle. But there's a little difference in PING because in PING, the van was supplied for the purpose of transporting employees. This van was not supplied for the purpose of transporting employees. This van was to transport material and equipment and tools. It just so happens he gave them a ride home one night and there was an accident. I agree with that, but I also stress that the intended purpose and what the actual purpose was. Well, the actual purpose at the time of question, it was being used as an employer-controlled van for employee travel. There were multiple employees in that van and they were traveling. That may not have been the intended purpose for what the employer wanted it to be, but I think going back to maybe what I told you earlier, the employer maybe just should have said, no, I'm not going to give you a ride and he wouldn't have exposed himself to liability. Because how we get control, I think HINDL and PING both show us ways that the employer has control. And HINDL control was shown because the employer paid the crew leader to drive. In this case, we do have the co-employee that is driving Norman, the other two employees, he is being paid to drive. He's still on the phone. And PING control was shown because the employer provided the van and the driver. Well, there's no dispute that this is the employer's van. Can I ask a question? I'm sorry, I don't mean to interrupt. No, that's fine. There's no evidence here that the employee driving the van is being continually compensated. Is there? For driving the van is what I'm asking. Oh, I'm sorry. No. Not specifically for driving the van. To my recollection, he was still on the clock. I believe the employer did testify that the employee driving was still being paid because he was driving the employer. And I think that's why he did remain on the clock. And then there's some other facts too we haven't discussed. What occurred with the girlfriend? She was unable on this afternoon to pick up the claimant? Yeah, the testimony was her car was overheating and she was afraid she was not going to make it across town to pick up my client from the job site where the intended pickup spot was that day. And then lastly, there was a little happy hour after work and before the drive. Yeah, a little happy hour. I would say that was a personal deviation that ended once the beer was done being consumed and then my client stepped back into the vehicle. I guess I would equate it a bit to the plaintiff and cops who went to the bank but then got back onto the normal route. That was found to be a personal deviation, but once he got back onto his route, he was still in the course of his employment. So how did you say the employer could avoid liability under this circumstance? Don't get his employee to ride. Okay, that's an interesting argument. So what happens when his car doesn't start in the middle of a snowstorm? According to you, he should tell the employee, I can't drive you in the van. You're going to have to be left in 20 below zero weather in a snowstorm because I can't drive you. Is that what we want to do to people? No. No? Do you have an answer to that? We don't have. The basic human answer is no, we don't want to leave people stranded in a snowstorm. The answer is no good deed goes unpunished. Yes. I'm just getting hung up on whether or not the van was assigned or tasked for the purpose of driving people or not. This was sure happenstance. If the girlfriend had arrived, there wouldn't have been a problem, would there, with the employee liability? That is correct. But that's not what happened. I know. What happened is my client did get in the van, and he was injured. Based on the case law, I think it arises out of the course of case one. I think we understand your argument. Okay. Are there any other questions? I don't hear any, and you'll have time to reply. Thank you, I appreciate it. Good morning. I guess before I start, myself and the Attorney General's office are going to split the time. Yes. Thank you. It's the Court Counsel. My name is Todd Lichtenberger. I represent Home Improvement in this case. First of all, I want to address the standard review issue. In this case, there seems to be a disagreement between the parties as to what standard applies to noble versus manifest weight, and termination as to whether an accident arose out of it in the course of the employment. It's manifest weight. Okay. Don't waste your time. Counsel for Mr. Jones argues that, well, strike that. Jones testified that he traveled to and from work each day by riding Mormon. Mormon testified differently. He said that's not true. And he only gave Jones a ride home from the work site that day because he asked him to do so as a favor. The commission decided this material and disputed it back in favor of Mormon. Jones argues that an accident arose out of it in the course of employment by citing Ping and Dillbeck. Those cases were discussed a little bit just a few minutes ago. And it seems that he's taking the position that merely being inside Mormon's van at the time is enough. And the cases don't say that, do they? I would say no. That's too narrow of a look at the holdings in Ping and Dillbeck. Those Ping and Dillbeck rely on fact patterns which demonstrate a level of control by the employer that goes way beyond just being in the vehicle. Moreover, I would say those decisions in those cases indicate a great deal of importance on who benefited from the employee being in the employer's vehicle at the time. And in both Ping and Dillbeck, I think it says right out in those cases that the employer benefited. In this case, the commission made a factual finding that Mormon did not control the transportation, nor did he benefit by giving Jones a ride to the gas station and meet his girlfriend. Mormon testified he had to alter his travel plans in order to take Jones to the gas station. He had intended to go to the lumber store and pick up some materials, but had to alter that travel. I would say the ride provided to Jones that he was done as a favor, which meant that it was only Jones. So you hit on the magic formula. Wasn't that the distinguishing factor in the other cases at Hindle that he cites, where this van was assigned to be used to transport employees on a regular basis? That's clearly not the case here, correct? No. In fact, I think we have a pretty good indication that at the time of the accident, Jones was sitting on a two-box in the back of the van. This was not a passenger van. It was not designed to transport employees. So would that analysis be different if it had occurred in the morning on the way to the job site as opposed to after hours on the way home? I think if Jones had called Mormon that morning and said, look, my girlfriend's car won't start. I can't get there. Could you come and pick me up? Then I think my argument would be the same. He was doing a favor for him. This was not any kind of regular— The benefit would have been for the employer as well, though, for having his employee there to do the work. Possibly. I guess the employer could have said, well, it's not my job to give you a ride. I don't want to be exposed. Get your own ride and work on. By the way, if you don't show up, I'm going to fire you. I don't think that would be—I don't think we would want to promote that kind of a policy. So no matter how you strike it, this was not done as a normal— I think that's the key. I think you've got to be a little bit careful about having the case turn on whether or not the employer arguably benefited from it. Because I think the cases talk about a more objective, was it tasked for this purpose, not whether the employer— Arguably, to make sure your employee is safe when he goes home, you can make a broad argument, that's to the employer's benefit, isn't it, so he doesn't get killed? So I don't think you want to get too far turning on that issue. Correct. If you know what I'm saying. I think probably the more important discussion on the bill back in Ping was the transportation provided in Ping. It was a passenger van. This person was paid to drive people back and forth. He was told that he could not use this van for other purposes. And the van was to remain parked when it wasn't in use for transporting people back and forth. That's the key distinction. With regards to the issue of traveling employee, I'll touch on that briefly. Jones argues that he was a traveling employee and therefore should be covered from the time he leaves home to the time he gets back. And I would just say that the commission correctly found that he was not a traveling employee and relied upon the Venture Newberg case. In Venture Newberg, the employer argues that the employee, Doherty, was found not to be a traveling employee. And the court concluded specifically the following factual determination. Doherty was hired to work at a specific location, which was not the employer's premises. And he was not directed to travel away from that work site to another location. Doherty merely traveled back and forth from his place of residence to the work site after all the other employees. And finally, Doherty was not reimbursed for his travel expenses, nor was he assisted in making any travel arrangements. In our case, just like Doherty, Jones was hired to work at a specific location. There's no credible evidence that he was ever required to travel from site to site. That was the same thing in Venture Newberg. He wasn't moving around during the course of the day. Correct. There's no evidence he was required to go from workplace to workplace. Just traveling between the work site and his residence like all the other employees. And there's no evidence that Jones was reimbursed for his travel expenses. He wasn't assisted. The commission found that this was done merely as a favor. I would say by that standard, set forth in Venture Newberg, he was clearly not a travel employee. That's all I have. Thank you, counsel. Counsel? Good morning, Your Honor. Counsel. I'm Assistant Attorney General Mary LaRocque. Here representing the defendant, Kelly Illinois State Treasurer, as ex officio custodian of the Inter-Workers Banking Fund. We also ask this court to affirm the commission's decision on both grounds argued by Mormon. Because the evidence did not show either that Mormon controlled Jones' transportation for its benefit or that Jones was a traveling employee. We agree with Your Honor that a rule saying that any time a person is in an employer-controlled conveyance is going to cause problems. But fortunately, that's not what the case law says. The case law does, even if the employee himself is not required to accept it, the cases still say that there must be some intentional provision of transportation. And the question of benefit, we think, is tied to the provision of transportation. The employer must have made a determination to provide transportation and done something about that because that provision is for its benefit. Liability can't attend to a sure happenstance if a person jumps in the van regardless of the reason. So those two factors have to be considered and they were not present in that case, so that test does not apply. Jones is also mistaken in believing that anyone who doesn't have a fixed place of employment or doesn't work somewhere other than the employer's business address or premises owned by his employer is a traveling employee. The employee must travel away from his employer's premises, but we need to unpack that a little. And the Venture Newberg case says that for the purposes of this doctrine, the employer's premises are anywhere that the employee is assigned to do work. And there are two kinds of traveling employees and these are represented in the two kinds of analysis that the court did in Venture Newberg. One is the employee whose employer requires him to travel to a distant location. This happened in Venture because he was required to move 200 miles from his home. The second kind is the one whose work requires him to travel from place to place in the course of a single day. Examples of these are the Curtis case where the bank manager traveled between locations, Cox where the foreman traveled between locations supporting the crew. And Jones does not fit into either of those two categories of employees. He wasn't required to move to an unfamiliar location because he did go to a number of job sites, but those were all within a certain radius from the employer's business address and his home. And he didn't encounter more of the risks of the road because he didn't move around from place to place in the course of doing his duties. He did say at one point, I believe, that he did, but it is undisputed that he wasn't doing that in that case. Just as in Venture Newberg, he stayed in the same place at that time. An employee is not categorically a traveling employee just because he sometimes is. In other words, you're not a traveling employee. If your employer says, and this typically happens in construction cases, you're going to be in Gurney this week. Next week you're going to be in South Holland. And you go there and then you leave. You're not a traveling employee because that's your employer's fixed place of business for that week. If he was told to start the morning here, go here in the afternoon, go here in the evening, he clearly would be a traveling employee because he's moving around in the course of the day at the employer's request. It's not that complicated. Do you want to do it? You do? Yeah. You seem to be fairly inappropriate at this point. If there are no further questions with respect to the remaining issues, we will stand on our leave. And we urge this Court to affirm Mr. Newport's decision, which upheld the Commission's final decision. Thank you. Thank you. Counsel, you may reply. Thank you. I don't believe I adequately covered my traveling employee argument. Justice Host and I feel as if I've lost you on that one. I think this case is analogous to Cox. In Cox, the petition was for a sewer and excavating contractor. The Court very clearly said he had to travel away from his employer's premises to perform his job. But the question becomes, what is the premises that she alluded to for purposes of applying the doctorate? Away from the premises. If the contractor is at a given location for a certain week, that's the employer's premises. If you're saying he's got to travel from the corporate headquarters, that is not the test. Venture and Newbrook settled that. Your premises is where the assigned work duty is that day. That's for the purposes of the traveling employee doctor, and that's the premises. Now, if he goes there and then has to go somewhere else at the employee's request, then he becomes a traveling employee. Because according to you, if you're in Gurneen and you've got to drive 150 miles somewhere, then you're automatically a traveling employee. Correct? According to me... It's not according to the law, but you seem to be saying that he's traveling to his job site. Everybody travels to their job site, don't they? Yes, but I think in Venture, he was hired to work at one specific location. And your guy at the state was hired to work at one specific location, was he not? No, my client was hired to work for Morgan's Home Improvement, doing roofing and remodeling work in the Vermillion County area. But you have to set the job site for that day. The client does not automatically become a traveling employee because he works for a construction company that might move him around. Is that what you're saying? Because the business moves around in his different job locations, he's automatically a traveling employee? I'm saying he's just like the plaintiff in Cox, who was found to be a traveling employee because he worked for a supercontractor who did work at different job sites. He may have worked in Danville one week, he may have worked in Westville one week. The Appellate Court grounds him to be a traveling employee in that case. Well, Venture Newberg is the Supreme Court of Illinois. I understand that, but I don't read Venture to overturn that. The distinction is, in Venture, he was hired to work at one specific location. My client was never hired to work at one specific location. He was hired to work, roofing and remodeling work for Morgan's Home Improvement, which may have been in Westville, it may have been in Danville, it may have been in Gridstone. I don't know that we agree with that interpretation, that automatically makes him a traveling employee because the job site changes from week to week or whatever. Okay. What did the records show in terms of how much movement he made from home to home? Candidly, I did not do a good enough job in developing that in Venture. What the evidence does show, based on the earnings records that the respondent put in, is typically in a week, he would be in one location. The next week, he would be in a different location. The next week, he would be at a different location. There is a tendency at this time to work for him. But once he got to the location, he didn't travel around in the course of the day to different job sites. He stayed at that location. Is that correct? That is absolutely correct. Okay. Just wanted to know that. All right. Thank you. If there's nothing else, I'll... We have a little more time. That's all I have. So I appreciate you taking the time for me today and considering my client's case. Thank you very much. Thank you, counsel. Thank you, all three counsel, for your arguments in this matter. This morning, it will be taken as advisement and written disposition. So I should...